875 F.2d 863
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert GARNER, Plaintiff-Appellant,
v.
REPUBLIC AIRLINES, a Minnesota Corporation, Defendant-Appellee.
 No. 88-1310.
 United States Court of Appeals, Sixth Circuit.
 May 31, 1989.
 
 Before NATHANIEL R. JONES, WELLFORD and RALPH B. GUY, Jr., Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant appeals from the district court's judgment dismissing his race and sex discrimination claims filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq. (1982), 42 U.S.C. Sec. 1981 (1982), and the Michigan Elliott-Larsen Civil Rights Act, M.C.L.A. Sec. 37.2101 et seq. (West 1985). Upon reviewing the record in this case, we affirm the district court's judgment.
 
 I.
 
 2
 In March 1976, plaintiff-appellant, Robert Garner, began working for defendant-appellee, Republic Airlines ("Republic"). Garner began working as a Reservations Agent in Republic's Taylor, Michigan reservations office. He continued to work in that position for the next five years. Thereafter, Garner passed the examination to become a Senior Reservations Agent, and he was promoted to that position in the Taylor office in May 1981. Three months later, Garner voluntarily relinquished this position for reasons unrelated to his job performance. He returned to his former position as a Reservations Agent, and continued to work in this position for the next four years.
 
 
 3
 In June 1985, Garner again took and passed the examination to become a Senior Reservations Agent and again was promoted to this position in August 1985. Following this promotion, Garner was transferred to a new reservations facility in Livonia, Michigan. Republic opened the Livonia facility to replace its Taylor and Atlanta, Georgia reservations offices. The record reflects that Garner performed his job duties in Livonia satisfactorily.
 
 
 4
 The Livonia reservations facility was equipped with a telephone tracking system (the "Collins system") that had previously been used in the Atlanta reservations office. The Collins system monitored the telephone activity in the reservations office and provided supervisory personnel with detailed, current statistics relating to the number of calls received and the handling of those calls by the Reservations Agents. The information produced by the system was used primarily to forecast staffing needs. The Collins system had not been used in the Taylor reservations office and, although the system was used in Livonia, Garner was not required to learn the system because it was not in operation during his shift.
 
 
 5
 Soon after the Livonia facility opened, Republic decided to utilize "Operating Supervisor" positions there. Operating Supervisors were first line floor managers who were immediately superior in authority to Senior Reservations Agents. Operating Supervisors were responsible for analyzing the information generated by the Collins system in order to determine the most efficient use of personnel. Operating Supervisors were also responsible for disciplining employees.
 
 
 6
 Initially, five Operating Supervisor positions were created for the Livonia office. The positions were first offered to the Operating Supervisors in the closing Atlanta office, and two of these employees accepted lateral transfers to Livonia. Republic then posted notice of the remaining three openings in its computer system. Garner and thirteen other Republic employees applied for the Operating Supervisor positions. Garner was interviewed by Sally Frost, Personnel Administrator for Republic's Eastern Region, and Michael Curcuro, a manager in Republic's Los Angeles, California office. After interviewing Garner, Curcuro concluded that he was not qualified to perform the technical tasks required of Operating Supervisors. Although Garner had analyzed statistical data while working as a Senior Reservations Agent, Curcuro opined that he was not capable of analyzing the detailed, statistical data produced by the Collins system. Based upon statements that Garner allegedly made during the interview, Curcuro also determined Garner was hesitant to perform the disciplinary aspects of the Operating Supervisor job. Curcuro communicated his impressions of Garner (and the other applicants he interviewed) to Frost, who then arranged further interviews for four white, female applicants. Three of those applicants ultimately were selected to fill the positions.
 
 
 7
 In late 1985, Republic transferred additional employees to the Livonia office, and thereby created the need for an additional Operating Supervisor. Again, notice of the new position was posted in the company's computer system. Garner applied for this position and apparently arranged an initial interview date. However, Garner withdrew his application and cancelled the interview after speaking with Louise Laughlin ("Laughlin"), Operations Manager for the Livonia facility. According to Garner, Laughlin said that she already had decided whom she would hire for the new position, and that she would interview Garner only as a matter of courtesy. Ultimately, Republic selected a black woman who had previously worked as an Operating Supervisor in Atlanta to fill this fourth position.
 
 
 8
 On July 2, 1986, Garner filed the instant lawsuit against Republic in the United States District Court for the Eastern District of Michigan. In his complaint, Garner alleged that his failure to obtain one of the initial three Operating Supervisor positions was the result of intentional race discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 1981, and the Michigan Elliott-Larsen Act. Garner's complaint made no specific allegations against Republic regarding the fourth Operating Supervisor position.
 
 
 9
 In December 1987, Garner's claims under section 1981 and the Elliott-Larsen Act were tried to a jury, while his Title VII claims were tried to the court. At the close of the proofs, Republic moved for a directed verdict on all of Garner's claims. The district court granted Republic's motion only on Garner's claims relating to the fourth Operating Supervisor position. Garner's remaining claims under section 1981 and the Elliott-Larsen Act were submitted to the jury, which subsequently returned a verdict of "no cause of action." Thereafter, the district court filed an order dismissing Garner's Title VII claims. This appeal followed.
 
 II.
 
 10
 Garner raises several arguments in this appeal. Specifically, he contends that the jury verdict dismissing his claims was "a mistake and clearly erroneous"; that the district court erred in granting a partial directed verdict in favor of Republic; that the district court erred in denying his request to call witnesses not listed on his pre-trial witness list; and, that the district judge was biased against him. We find each of these arguments to be without merit.
 
 
 11
 Because Garner did not move for a directed verdict or judgment notwithstanding the verdict in the district court, he has not preserved his "sufficiency-of-the-evidence" challenge for appeal. See Young v. Langley, 793 F.2d 792, 794 (6th Cir.), cert. denied, 479 U.S. 950 (1986). Moreover, because Garner admittedly withdrew his application for the fourth Operating Supervisor position, and because his complaint does not mention this position, we conclude that the district court properly granted Republic a partial directed verdict on Garner's claims relating to this position. See Love v. Alamance County Board of Education, 757 F.2d 1504, 1510 (4th Cir.1985) (holding that plaintiff's withdrawing of her application for a promotion was fatal to her race discrimination claims under Title VII and section 1981). In addition, we reject Garner's claim that the district court erred in denying his motion to amend his pre-trial witness list. The decision whether to allow the testimony of witnesses not listed in the pre-trial order rests within the sound discretion of the trial judge, and will not be disturbed on appeal except for abuse of discretion. Perry v. Windspur, 782 F.2d 893, 894 (10th Cir.1986); see also Daniels v. Board of Education of Ravenna School District, 805 F.2d 203, 210 (6th Cir.1986). Having examined the district court's well-reasoned explanation for denying Garner's motion, see Record at 16-18 (January 4, 1988), we conclude that the district court did not abuse its discretion in this case. Finally, since Garner has proffered no persuasive evidence of judicial bias, we also reject his assertions in this regard.
 
 III.
 
 12
 For these reasons, the district court's judgment is hereby AFFIRMED.